DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/5/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Steven Rawlins,

      Petitioner,

—v—

United States of America,

      Respondent.

19-cv-00135 (AJN)
15-cr-00377 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

  *Pro se* Petitioner Steven Rawlins petitions pursuant to 28 U.S.C. § 2555 for the Court to vacate his judgment of conviction on the grounds that one of his trial counsel provided ineffective assistance, or in the alternative, to hold an evidentiary hearing. Petitioner also challenges his sentence on the grounds that the Court's restitution and forfeiture orders were imposed in violation of his Due Process rights. For the reasons that follow, the petition is DENIED.

I.  **BACKGROUND**

  Petitioner Steven Rawlins served as a consultant and Chief Financial Officer for Prime Health Services and Core Choice, two healthcare services companies owned by and operated primarily by an individual named Brian Sharp. *See* Presentence Investigation Report ¶¶ 7-8. It was later discovered that Petitioner used his authority as CFO to misappropriate approximately $8 million dollars from these companies. *Id.* ¶¶ 22-26. Petitioner withdrew funds from the victim companies under the pretenses of paying taxes, financing and due diligence fees,

1

insurance payments, and other legitimate business payments, but secretly appropriated the funds into personal bank accounts to enrich himself and his family. *Id*.

After an FBI investigation, Petitioner was arrested and charged with one count of Wire Fraud in violation of f 18 U.S.C § 1343. Dkt. No. 1. Petitioner maintained his innocence and the case was scheduled for a two-week trial beginning in November of 2015. Dkt. No. 96. Prior to the start of trial, Petitioner's counsel Richard Braun moved to withdraw as counsel after a fee dispute. Dkt. No. 80. The Court denied the request but appointed CJA attorney Steven Brill as co-counsel for the trial. Dkt. No. 80. After the trial, the jury found Petitioner guilty on the one count charged. Dkt. No. 116. The Court sentenced Petitioner to 108 months' imprisonment and ordered forfeiture in the amount of $10,110,577.09 and restitution in the amount of $12,203,209.70. Dkt. Nos. 138, 139, 141.

Petitioner filed a direct appeal with the Second Circuit on November 22, 2017. The Second Circuit affirmed the judgment by summary order on August 22, 2017 "for the reasons principally set forth in the district court's orders and judgment." *United States v. Rawlins*, 696 F. App'x 22, 23 (2d Cir. Aug. 22, 2017). Petitioner filed for rehearing *en banc*, which the Second Circuit denied on November 15, 2018. *See United States v. Rawlins*, No. 16-2074, Dkt. No 104. Petitioner filed the instant § 2555 petition on January 3, 2019. Dkt. No. 157.

II. DISCUSSION

Section 2255 permits a prisoner in federal custody to challenge his conviction on the ground that it "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). In his petition, Petitioner argues that his conviction was imposed in violation of the Sixth Amendment because one of his counsel, Richard Braun, provided ineffective assistance due to a conflict of interest and because of his failures to put on certain evidence at

trial and effectively cross examine a key witness.  In the alternative, Petitioner requests that the Court hold a hearing on the factual issues surrounding his ineffective assistance claims.  Lastly, Petitioner argues that the restitution and forfeiture orders were imposed in violation of his Due Process rights.  As discussed below, the Court holds that no hearing is necessary and that Petitioner's arguments are without merit.

### A.  A hearing on Petitioner's ineffective assistance claims is not necessary

A § 2255 motion ordinarily requires a hearing if the motion sets forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the defendant] to relief." *Gonzales v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).  A hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b);*see also Machibroda v. United States*, 368 U.S. 487, 494 (1962); *Pham v. United States,* 317 F.3d 178, 184-85 (2d Cir. 2003).   Furthermore, because the petitioner is proceeding pro se, his submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

The Court determines that a hearing is unnecessary for resolving Petitioner's § 2255 petition because the motion papers and the record conclusively demonstrate that Petitioner is not entitled to any relief.  In support of his petition, Petitioner submitted an affidavit attesting to certain facts surrounding Braun's representation of him at trial, and the Government submitted an affidavit from Braun discussing the same issues.  Petitioner is correct that, as discussed further in this opinion, the affidavits are conflicting with respect to certain facts regarding Braun's representation.  However, resolving those facts is not necessary to resolving Petitioner's

§ 2255 petition. For the reasons explained below, even accepting Petitioner's version of events, the Petitioner has not demonstrated a claim for ineffective assistance of counsel. Therefore, his request for an evidentiary hearing is denied.

### B. Petitioner has not shown an actual conflict interest

Petitioner maintains that his counsel was ineffective because of a conflict of interest that arose from their payment arrangement. "A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Blau*, 159 F.3d 68, 74 (2d Cir.1998). "While a defendant is generally required to demonstrate prejudice to prevail on a claim of ineffective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984)," if "counsel is burdened by an actual conflict of interest" then "[p]rejudice is presumed[.]" *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002). Thus, a petitioner challenging his conviction "need only establish (1) an actual conflict of interest that (2) adversely affected his counsel's performance." *Id.* An "actual conflict" exists "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir.1993) (internal quotation marks omitted). An actual conflict "affect[s] counsel's performance—as opposed to a mere theoretical division of loyalties," *Mickens v. Taylor*, 535 U.S. 162, 163 (2002), when the conflict caused a "lapse in representation," meaning that "some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests," *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994) (quotations omitted).

With a little more than a week to go before the start of trial, Petitioner provided his defense counsel, Richard Braun, with a check for legal services. Braun tried to cash the check,

4

but it bounced.  In lieu of cash payment, Braun and Petitioner agreed that Petitioner would transfer to Braun his purported 10% interest in Core Choice, which was one of the victim companies from which Petitioner embezzled funds.  Dkt. No. 169-1; Dkt. No. 157 at 16, 20-23.[1] Shortly thereafter, Braun made a motion to withdraw as counsel on the grounds that Petitioner had failed "to live up to his financial obligations to counsel" making it "virtually impossible for counsel to represent" him effectively.  Dkt. No. 63.  Braun did not inform the Court of the Core Choice stock transfer.  The Court held a status hearing where it denied Braun's request to withdraw on the grounds that non-payment of legal fees alone is insufficient and appointed experienced CJA attorney Steven Brill as co-counsel.  Dkt. No. 80.  Brill fully participated in Petitioner's defense throughout the trial.  The Court did eventually grant a renewed motion to withdraw by Braun, but not until after the trial concluded.  Dkt. No. 118.  Braun testified in his affidavit that, after the trial, Core Choice disputed that Petitioner had any interest in the company.  Dkt. No. 169-1, Dkt. No. 169-2. Braun and Core Choice eventually entered into a confidential settlement agreement for $15,000.  *Id.*

Petitioner argues that the Core Choice transfer was an actual conflict of interest that tainted Braun's representation of him at trial.  According to Petitioner, Braun had a "financial interest" in the outcome of trial because he became a part owner of the victim company, as well as "a business partner with Brian Sharp."  Dkt. No. 157 at 4.  Petitioner alleges that after the transfer agreement, Braun "refused to attack the credibility of Brian Sharp, even though we had [previously] determined that it would be the most viable strategy as my trial defense," including that Braun "refus[ed] to confront Brian Sharp during cross-examination with the information and documentation which I had provided him."  Dkt. No. 157 at 16.  Specifically, Petitioner claims

---

[1] Petitioner and Braun dispute which of them suggested this arrangement.  *See* Dkt. No. 169-1, Dkt. No. 170 at 6-7.

5

that Braun (1) failed to make a proffer to get evidence admitted regarding Sharp's extramarital affair, (2) would not present impeachment evidence showing that Sharp lied during his testimony about certain matters, and (3) declined to introduce certain documents that Petitioner claims demonstrate that Sharp authorized him to make the transfers at issue. Dkt. No. 157 at 4. (As discussed in the next section, Petitioner also asserts that each of these decisions is an independent basis for an ineffective assistance of counsel claim).

Petitioner has not demonstrated that Braun's 10% ownership interest in Core Choice resulted in ineffective assistance of counsel. As an initial matter, demonstrating an "actual conflict" requires showing that he and Braun's "interests diverge[d] with respect to a material factual or legal issue or to a course of action" in the case. *Winkler*, 7 F.3d at 307. Petitioner does not specifically articulate how he and Braun's financial arrangement created divergent interests. His assertion that Braun became "business partners" with Sharp and had a "financial interest in the outcome of the trial" are highly conclusory and speculative. Dkt. No. 157 at 3.

Nonetheless, the Court will assume for the purposes of this motion that the transfer resulted in a conflict of interest for Braun. Even still, Petitioner has not demonstrated that the conflict actually affected Braun's performance. An actual conflict affects counsel's performance when counsel foregoes a "plausible" alternative defense strategy because of the conflict. *United States v. Feyrer*, 333 F.3d 110, 118 (2d Cir. 2003). But while Petitioner argues that Braun declined to attack Sharp's credibility, it is clear from the record that Braun did not forego that strategy at all. Braun called witnesses to testify as to Sharp's lack of truthfulness and made other attacks on Sharp's credibility and motivations. *See, e.g.,* Trial Tr. 1701, 1750, 2006-07. Ultimately, what Petitioner takes issue with is Braun's decisions on *how* to attack Sharp's credibility, i.e., that he chose certain lines of questioning over others and didn't introduce certain

evidence. But Petitioner has not shown that the purported conflict was the *cause* of those decisions. *See United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000). Petitioner's theory is that Braun was motivated to refrain from attacking Sharp in order to maintain a business relationship with Sharp or to protect the value of his shares, or both. This is fully contradicted by the fact that Braun did call witnesses to the stand to testify that Sharp was not a truthful person and stated in open court that Sharp was an unreliable witness. Petitioner has not shown how the conflict caused Braun to choose one strategy for attacking Sharp's credibility but forego the others. He therefore has not demonstrated any lapse in representation resulting from the purported conflict.

Moreover, it is undisputed that Brill, who was appointed as co-counsel prior to the start of trial, was conflict free and zealously advocated on Petitioner's behalf. While Brill did not cross-examine Sharp specifically, he was present for the entire trial and actively participated in Petitioner's defense throughout. Courts have found that the full participation of conflict-free co-counsel helps to ensure that there is no lapse in representation. *See Clark v. Chappell*, 936 F.3d 944, 985 (9th Cir. 2019); *Stoia v. United States*, 109 F.3d 392, 398 (7th Cir. 1997); *Hoffman v. Leeke*, 903 F.2d 280, 287 n.3 (4th Cir. 1990).

In sum, Petitioner has not demonstrated that the purported transfer of the shares to Braun resulted in a lapse of representation. Rather, the record demonstrates that Braun fully pursued the strategy of attacking Mr. Sharp's credibility. While Petitioner may have disagreed with the methods that Braun chose to carry out that strategy, there is no basis to believe that Braun's decisions in that regard were materially affected by any purported conflict. That is especially the case where Braun labored in tandem with experienced co-counsel who was conflict- free.

### C. Petitioner's remaining ineffective assistance claims are without merit

Outside of the alleged conflict of interest, Petitioner argues that Braun provided him ineffective assistance in violation of the Sixth Amendment because of certain decisions Braun made at trial. To make an ineffective assistance of counsel claim, "a defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010); *see Strickland*, 466 U.S. 668. For the reasons stated below, Petitioner has not met either prong.

### 1. Objective standard of reasonableness

Under the first prong of the *Strickland* test, the Court is to be "mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008). As a result, the Court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Court will also consider "the circumstances counsel faced at the time of the relevant conduct and evaluate the conduct from counsel's point of view." *Parisi*, 529 F.3d at 141 (ellipsis omitted). Simply disagreeing with counsel's trial strategy is not enough on its own to support an ineffective assistance of counsel claim. *See United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986) (holding that a defendant cannot "claim ineffective assistance of counsel merely because . . . he thinks counsel's trial strategy was inadequate.").

Each of Braun's decisions that Petitioner challenges were matters of trial strategy that fell well within the wide range of reasonable professional assistance provided by criminal defense attorneys. As such, they cannot serve as the basis for an ineffective assistance claim.

First, Petitioner claims that Braun failed to make an evidentiary proffer supporting the admission of evidence regarding Sharp's extra-marital affair. Prior to trial, the Government made a motion *in limine* to exclude this evidence, and Braun had argued that it was relevant to Sharp's credibility because it demonstrated general dishonesty. Dkt. No. 96, Trial Tr. at 16-17. The Court disagreed and made a preliminary ruling that evidence of the affair would be excluded, but informed Braun that he could make an offer of proof explaining any additional theories of relevance once trial started. *Id.* The Court had asked Braun to submit a written offer of proof, but on the first day of trial Braun informed the Court that he had inadvertently missed the Court's deadline. Dkt. No. 67 at 16. The Court nonetheless told Braun that it was fine for him to make the offer of proof orally a day later. *Id.* The second time around, Braun argued that the affair was relevant because Sharp had lied to both his then-wife and Petitioner about the affair for an extended period, and later would ask Petitioner to assist him in concealing the affair from his then-wife. Dkt. No. 98 at 91-93. The Court was unpersuaded and maintained its original ruling excluding evidence of Sharp's extra-marital affair. *Id.*

Petitioner claims that this amounted to ineffective assistance. Petitioner argues that counsel "failed to submit the proffer," Dkt. No. 157 at 5, but the record demonstrates that Braun did in fact get this opportunity and did in fact take advantage of it. While counsel missed the deadline for the written proffer, the Court readily permitted him to orally submit the proffer and provided him a day's notice to prepare. Additionally, Petitioner argues that Braun should have approached the proffer differently, including that he should have made certain legal arguments, suggested a limiting instruction, and drawn the Court's attention to what in his view are relevant cases. Dkt. No. 157 at 5. These arguments fall well short of demonstrating ineffective assistance. "Mere disagreement with an attorney's strategy is not enough for a [petitioner] to

9

prevail on an ineffective assistance claim." *United States v. Spigelman*, No. S305-cr-960 (SAS), 2008 WL 84539, at *2 (S.D.N.Y. Jan. 8, 2008).  As his counsel, Braun made the strategic decision not to push the argument any further than he did—indeed Braun even noted during the proffer that the Court appeared unlikely to change its mind.[2]  Dkt. No. 98, Trial Tr. at 93.  That decision was well within the wide range of objectively reasonable approaches to providing a criminal defense.

Second, Petitioner claims that, prior to trial, Petitioner provided Braun with two "Corporate Resolutions" from Prime Health which Petitioner claims show that Sharp authorized him to make the fraudulent transfers.  Petitioner argues that these documents provide "positive and conclusive proof that Brian Sharp had full knowledge of, and had approved and authorized all of the cash transfers that the Government had claimed were illegal."  Dkt. No. 157 at 7.[3]  Petitioner says that when he showed these documents to Braun, Braun referred to them as a "smoking gun" and said they would destroy Sharp's credibility, but then Braun declined to submit them at trial and never told Petitioner why.  Dkt. No. 157 at 6-7.  Braun testifies that none of that ever happened and he was never shown the documents.  Dkt. No. 169-1.

The Court need not resolve the underlying factual issue of whether Petitioner provided Braun with the "Corporate Resolutions" prior to trial, because even if he had, the decision not to submit them as evidence would not amount to ineffective assistance.  Assuming *arguendo* that they are authentic, these are boilerplate corporate documents that at most gave Petitioner authorization to make financial decisions on behalf of Prime Health (i.e., endorse checks, open

---

[2] The Second Circuit affirmed the Court's decision to exclude evidence of the affair on direct review. *See United States v. Rawlins*, 696 F. App'x 22 (2d Cir. Aug. 22, 2017).
[3] The documents to which Petitioner refers were submitted as part of a civil suit wherein Prime Health sued a bank for negligence in failing to prevent Petitioner's fraud. *See Prime Health Services, Inc. v. Capital Bank, N.A. et al.*, No 16-cv-00034 (M. D. Tenn.).

accounts, borrow money on behalf of the corporation, etc.). Dkt. No. 169-3, Dkt. No. 169-4. But whether Petitioner had this authority generally was not a contested issue at trial; to the contrary Petitioner's authorization to withdraw funds on behalf of Prime Health was a key assumption. The issue at trial was whether Petitioner abused that authority by misappropriating funds under the guise of ordinary business activity. Moreover, the "Corporate Resolutions" only relate to *one* of the many Prime Health bank accounts from which Petitioner made withdrawals, and they did not authorize withdrawals as to Core Choice. Thus, far from a "smoking gun," these documents are arguably not probative of Petitioner's innocence at all, and it well settled that the "failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

Third, and finally, Petitioner argues that Braun failed to submit impeachment evidence "in his possession" which Petitioner argues demonstrated that Sharp testified falsely about certain matters. Specifically, Petitioner claims that Sharp testified (1) that Prime Health never acquired a company called "Applied Metrics," (2) that Petitioner provided a prospective lender certain documents instead of Sharp, (3) that Sharp had never taken clients to watch sports games at Petitioner's private box suites at a sports stadium, despite the fact that evidence allegedly demonstrates that all of this testimony was untrue. The Government counters that Petitioner grossly misstates both the significance of each of these issues and the degree to which Sharp's testimony on these matters was incomplete or inaccurate (if at all). Dkt. No. 169 at 30-32. The Court determines that Braun's decision not to attempt to impeach Sharp with this evidence does not provide the basis for an ineffective assistance claim. "[A]dvocacy is an art not a science," *Strickland*, 54 F.3d 1062, and a reasonable defense attorney might decide that aggressively pushing a"point on cross-examination risk[s] alienating the jury for no particular strategic gain."

11

*Bierenbaum v. Graham*, 607 F.3d 36, 56 (2d Cir. 2010). Especially considering that Braun had already attacked Sharp's credibility in other ways, Braun's assessment that those lines of questioning were weak or otherwise unwise was a strategic decision that did not fall below an objective standard of reasonableness. *See United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are [] strategic in nature.").

Therefore, Petitioner has not shown that any of Braun's decisions fell outside of the wide range of reasonable professional assistance and therefore cannot bring a claim for ineffective assistance.

### 2. Prejudice

Even if Braun's performance had been objectively unreasonable, Petitioner must also demonstrate prejudice. *See Strickland*, 466 U.S. at 687. To demonstrate prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In assessing prejudice, courts review the record to determine the impact of the alleged ineffectiveness within the context of the entire trial. *See Berghuis v. Thompkins*, 1560 U.S. 370, 389 (2010) ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695). In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 694.

Petitioner cannot make this showing. Petitioner's challenges largely focused on what he claims was Braun's failure to effectively challenge Sharp's credibility, but the record included

ample evidence outside of Sharp's testimony, including overwhelming documentary evidence outlining the fraudulent transfers as well as ample testimonial evidence of multiple individuals who observed various aspects of the fraud, and even evidence showing that Petitioner admitted to owing hundreds of thousands of dollars to Prime Health. Dkt. No. 102, Tr. 730-742. Considering the record as a whole, even if any of Braun's challenged decisions had been objectively unreasonable, there is not a reasonable probability that the jury would have had a reasonable doubt as to his guilt if Braun had pursued Petitioner's preferred strategies.

### D. Petitioner's due process claim is without merit

Petitioner's final claim is that because he was only charged with one count of wire fraud, it was impermissible for the Court to impose restitution and forfeiture at sentencing based on the various cash transfers the Government established at trial. According to Petitioner, because each of these cash transfers were not charged as separate counts, the restitution and forfeiture orders were based "on conduct that was never charged, or never specifically identified in the Criminal Information." Dkt. No. 157 at 10.

This argument is meritless. After a conviction, the Court need determine the amount of restitution and forfeiture by a "preponderance of the evidence." *United States v. Gushlak,* 728 F.3d 184, 194 (2d Cir. 2013); *United States v. Peters*, 732 F.3d 93, 98 (2d Cir. 2013). The Court is aware of no authority, and Petitioner cites none, precluding the Court from ordering restitution or forfeiture based on fraudulent transfers unless each transfer has been charged a separate count or specifically identified in the criminal information.

## III. CONCLUSION

For the reasons stated in this opinion, Petitioner's § 2255 petition is DENIED. This resolves Dkt. No. 157. The Clerk of Court is respectfully directed to mail a copy of this

Memorandum Opinion & Order to the Petitioner, note that mailing on the public docket, and close this case (19-cv-1035).

Because Petitioner "has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue." *Perez v. United States,* No. 04-cv-7148 (JSR), 2007 WL 685949, at* 1 (S.D.N.Y Jan. 29, 2007) (citing 28 U.S.C. § 2253). The Court finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: October 5, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge